IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TARA HOOKER AND <br> LOUIS HOOKER <br><br> Plaintiffs, <br><br> v. <br><br> DALLAS INDEPENDENT <br> SCHOOL DISTRICT, <br><br> Defendant. | § § § § § § § § § § § § § | Civil Action No. 3:09-CV-0676-G-BH |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to Special Order No. 3-251, this case has been referred for pretrial management, including determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. By order dated July 26, 2010, *Defendant Dallas Independent School District's Objections to Magistrate Judge's Findings, Conclusions, and Recommendation*, filed July 14, 2010 (doc. 40), were also referred for recommendation. Based on the relevant filings, evidence, and applicable law, the Court **VACATES** its findings, conclusions, and recommendation, entered June 30, 2010 (doc. 39), and recommends that *Defendant Dallas Independent School District's Motion to Dismiss Plaintiff's Amended Complaint*, filed April 27, 2010 (doc. 20), be **GRANTED**, in part, and **DENIED**, in part.

## I. BACKGROUND

This is an appeal from the decision of a Texas Education Agency ("TEA") special education hearing officer. (*See* Mot. App. at 1, 3.)

On July 8, 2008, Plaintiffs Tara Hooker and Louis Hooker (collectively "Plaintiffs") filed a complaint with the TEA on behalf of their minor son ("E.H."), a student with disabilities who is

eligible to receive special education services from the Dallas Independent School District ("DISD"). (Mot. App. at 1, 3.) Plaintiffs requested a due process hearing pursuant to the Individuals with the Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415 et seq., alleging that E.H. had been denied a Free Appropriate Education ("FAPE") during academic years 2006-2007 and 2007-2008. (*Id.*) Plaintiffs alleged that DISD had denied E.H. special education services for academic year 2006-2007, failed to timely provide them with the results of E.H.'s evaluations, failed to comply with legally required timelines in accordance with required procedures, and falsified records in order to extend those timelines. They also claimed that although DISD found E.H. eligible to receive special education services during the 2007-2008 school year, it had failed to sufficiently develop a special education program for him. (Mot. App. at 1.) DISD responded that Plaintiffs could not assert acts and omissions occurring outside the applicable statute of limitations period. (*Id.* at 2.)

A hearing officer conducted the due process hearing in November 2008, and rendered a decision in favor of DISD on January 15, 2009. (*Id.* at 4-5, 19.) She found that claims arising out of DISD's acts or omissions prior to July 7, 2007,[1] were barred by the one-year statute of limitations because, among other things, there was insufficient evidence to establish that DISD had withheld information from Plaintiffs, and the evidence established that Plaintiffs had received copies of procedural safeguards in April 2007. (*Id.* at 10, 17.) She also found that the evidence was insufficient to prove that E.H.'s 2007-2008 special education plan was deficiently designed and implemented. (*See id.* at 17.)

Following the hearing officer's decision, Plaintiffs filed this *pro se* action against DISD,

---

[1] Although the hearing officer used this date in her "Conclusions of Law", she found that the one-year statute of limitations confined E.H.'s complaint to acts or omissions on the part of DISD occurring between *July 8, 2007* and July 8, 2008 in the "Statute of Limitations" section. (Mot. App. at 17.) This discrepancy in dates does not affect the outcome.

2

seeking damages under the IDEA; § 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.* ("Rehabilitation Act"); the Americans with Disabilities Act, 42 U.S.C. § 12.101 *et seq.* ("ADA"); and 42 U.S.C. § 1983 ("§ 1983").[2] Plaintiffs make the following allegations in the background section of their complaint:

> 1.[3] They requested a special education evaluation for E.H. in the 2006-2007 academic year. The request for the evaluation occurred during an SST meeting about the younger brother. They were told that E.H. must go through the Student Support Team ("SST") process where interventions would take place to determine if E.H. would need help from the special education department.
>
> 2. E.H.'s SST meeting dates were February 28, 2007, March 28, 2007, and April 3, 2007.
>
> 3. E.H. was referred to special education on April 4, 2007.
>
> 4. The parents consented to a full and individual evaluation with psychological testing on May 22, 2007, and again per written letter June 14, 2007.
>
> 5. The Full Individual Evaluation ("FIE") report was completed August 9, 2007.
>
> 6. The Admission, Review, and Dismissal ("ARD") committee determined E.H. learning disabled (math reasoning) and speech impaired on August 22, 2007.

(Am. Compl. at 1.) In a section entitled "violations", Plaintiffs also make the following allegations:

> 7. They did not receive procedural safeguards when they made the request for a special education evaluation, and their right to an evaluation was violated when their request was treated the same as a later-filed school referral. (*Id.* at 2.)
>
> 8. None of the interventions in the intervention plan qualifies as research-based instruction as required for response-to-intervention ("RTI") under the IDEA and the No Child Left Behind Act. RTI was conducted over the course of the entire school year. Their rights were violated by non-adherence to RTI law. They were also not provided certain required information, therefore creating an exception to the statute of limitations.

---

[2] The parents included E.H., a minor child, as a named plaintiff in the original complaint but did not include him as a plaintiff in the amended complaint after a court order required them to obtain legal representation for him. (*See* doc. 4.)

[3] For ease of reference, the allegations in Plaintiff's complaint have been numbered, and this recommendation will use these numbers for purposes of addressing DISD's motions.

9. The Principal of Tom C. Gooch recently sent out a letter to all parents stating policy contrary to DISD's policy per the student handbook. DISD employees make up and violate district policy and DISD does little to stop such conduct therefore violating parents and students' rights.

10. The Achenbach Psychological assessment was filled out by Deborah Thorpe on February 6, 2007, without their required consent.

11. The suicide risk assessment was given April 3, before they provided their consent on April 4, 2007.

12. The BASC psychological assessment results were run July 31, 2007, and included in the FIE after the parents rescinded permission on May 22, 2007, and June 14, 2007, through a written letter.

(Am. Compl. at 2-3.) In yet another section entitled "Retaliation", Plaintiffs allege that:

13. DISD retaliated against them by claiming that they did not conduct RTI and did not have RTI policies or procedures in place. DISD had those policies in place and submitted them in response to the due process complaint and a TEA complaint on behalf of their other son.

14. DISD's attorney, Ms. Jolah, violated the law by knowingly making a false statement during the due process hearing conducted November 13 and 14, 2008, to influence the outcome of the hearing.

15. DISD's counselor falsified the student records saying that Plaintiffs had in-home visits by a DISD social worker. When they requested records to support that claim, DISD admitted that such records did not exist.

16. DISD's school counselor used Child Protective Services ("CPS") as a threat against the mother after she spoke to Principal Fincher about trouble with the testing process. The diagnostician Linda Tokoly brought this up after the mother began requesting her children's records during the 2007-2008 school year.

17. DISD retaliated when Michael Milstead falsely testified that he had not heard from the mother for three weeks after he sent the Independent Educational Evaluation ("IEE") paper work in order to influence the hearing officer and portray the mother in a negative light. She called Mr. Milstead several times after August 1, 2006, and left messages, and even faxed him because he would not respond to her phone messages.

(Am. Compl. at 3-4.) Plaintiffs conclude that DISD intentionally violated the parents' and the student's rights, made false statements and engaged in malicious acts "in order to deny FAPE and

4

due compensatory education to the student," and poorly implemented its policies, thereby causing "harm to the parents and student involved." (*Id.* at 5.)

On April 27, 2010, DISD moved to dismiss this action for lack of jurisdiction under Rule 12(b)(1), and for judgment on the pleadings under Rule 12(c). With a timely-filed response and reply, the motions are now ripe for consideration.

## II. EVIDENTIARY CONSIDERATIONS

DISD moves to strike evidence attached to Plaintiffs' response brief, including documents entitled "STATS–Spring Semester 2007," "Learning Disability, Method I," and "Behavior Assessment System for Children, Second Edition." (Reply Br. at 7.) DISD argues that these documents are not authenticated and irrelevant. (*Id.*)

Under Fed. R. Evid. 901(a), authentication or identification is a condition precedent to admissibility. Rule 901 does not require conclusive proof of authenticity; it merely requires some evidence sufficient to support a finding that the evidence in question is what the proponent claims it to be. *United States v. Arce*, 997 F.2d 1123, 1128 (5th Cir. 1993). Some types of evidence are self-authenticating and require no extrinsic foundation for admission. *McIntosh v. Partridge*, 540 F.3d 315, 322 n. 6 (5th Cir. 2008). Fed. R. Evid. 902 sets out the requirements for such self-authenticating documents. *Id.*

Here, the exhibits at issue are not self-authenticating documents, and Plaintiffs do not present any evidence, such as an affidavit, to establish that the submitted exhibits are true copies of what they purport to be. DISD's objections to these exhibits are therefore **SUSTAINED,** and the motion to strike is **GRANTED**.[4]

---

[4] Consideration of the evidence would not change the ultimate recommendation in this matter.

## III. RULE 12(b)(1) MOTION TO DISMISS

DISD first moves to dismiss Plaintiffs' claims for lack of subject matter jurisdiction. (Mot. Br. at 2-14.)

**A.    Legal Standard**

Federal courts are courts of limited jurisdiction; without jurisdiction conferred by the Constitution and statute, they lack the power to adjudicate claims. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). Considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.* When the court dismisses for lack of subject matter jurisdiction, that dismissal "is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.*

The district court may dismiss for lack of subject matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject matter jurisdiction. *See*

*Paterson v. Weinberger*, 644 F. 2d 521, 523 (5th Cir. 1998). "If sufficient, those allegations alone provide jurisdiction." *Id.* Facial attacks are usually made early in the proceedings. *Id.* When the defendant supports the motion with evidence, then the attack is "factual" and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413. A factual attack may occur at any stage of the proceedings. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Regardless of the nature of attack, the party asserting jurisdiction constantly carries the burden of proof to establish that jurisdiction does exist. *Ramming*, 281 F.3d at 161.

Here, DISD's Rule 12(b)(1) motion to dismiss relies on the amended complaint and the hearing officer's post-hearing decision, which is a matter of public record subject to judicial notice and is accessible through TEA's website. *See Pension Ben Giar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1197 (3d Cir. 1993) (public records include letter decisions of government agencies and published reports of administrative bodies if the public has unqualified access to them). Defendant therefore presents a facial attack that does not require the Court to resolve matters outside the pleadings. *See Lester v. Lester*, 2009 WL 3573530, at *4 (N.D. Tex. Oct. 29, 2009); *Bridgewater v. Double Diamond-Delaware, Inc.*, 3:09-CV-1758-B, 2010 WL 1875617, at *5 (N.D. Tex. May 10, 2010).

**B.     Standing**

DISD asserts that Plaintiffs lack standing to raise the Rehabilitation Act and ADA claims, and some of their § 1983 claims. (Mot. Br. at 2.)

"Article III of the Constitution limits federal 'Judicial Power,' that is, federal-court jurisdiction, to 'Cases' and 'Controversies.'" *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395

7

(1980). "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). This requirement, like other jurisdictional requirements, is "not subject to waiver." *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996). The Supreme Court "insist[s] on strict compliance" with the requirement. *Raines*, 521 U.S. at 819.

To meet the standing requirement, plaintiffs "must allege *personal injury* fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Id.* at 818 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)); *accord Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). As stated in *Lyons*, to satisfy the "case or controversy" requirement of Article III, a "plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." 461 U.S. at 101-02 (citations and internal quotation marks omitted) (addressing standing to sue). "The constitutional limits on standing eliminate claims in which the plaintiff has failed to make out a case or controversy between [the plaintiff] and the defendant." *Lewis v. Knutson*, 699 F.2d 230, 236 (5th Cir. 1983).

Here, DISD concedes that Plaintiffs have standing under the IDEA but assert that they lack standing under the ADA, the Rehabilitation Act, and § 1983 to the extent that they are alleging a denial of E.H.'s rights. (Mot. Br. at 4.)

    1.    <u>ADA and Rehabilitation Act Claims</u>

DISD argues that Plaintiffs lack standing under the ADA and the Rehabilitation Act because they do not allege sufficient facts to establish that they were disabled or that they suffered disability-based discrimination. (Mot. Br. at 5.)

The ADA and the Rehabilitation Act prohibit public entities from discriminating against an

8

individual based on his or her disability; the individual must show that he was excluded from, or denied benefits, based on his or her disability. *See* 42 U.S.C. 12132; 29 U.S.C. § 794(a). The ADA and the Rehabilitation Act also prohibit public entities from discriminating against an individual based on his or her association with a disabled person. *See* 28 C.F.R. § 35.130 (g) (ADA); *Popovich v. Cuyahoga Cnty. Ct. of Common Pleas*, 150 F.App'x 424, 427-28 (6th Cir. 2005) (Rehabilitation Act). An associational discrimination claim "requires a separate and distinct denial of a benefit or service to a non-disabled person" and "may not be premised on a derivative benefit or harm based on treatment towards a disabled person." *United States v. Nobel Learning Cmtys., Inc.*, 2010 WL 1047730, at *4 (E.D. Pa. Mar. 19, 2010).

Here, Plaintiffs' complaint, even if liberally construed, does not allege that Plaintiffs were disabled or were denied benefits or services based on their child's disability. The issue is whether Plaintiffs can pursue their own claims against DISD arising out of any alleged discrimination against E.H. The Supreme Court recently held in *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 533 (2007), that parents can assert their own claims under the IDEA regarding the denial of a FAPE for their child. A few courts have extended the *Winkelman* decision to the ADA and the Rehabilitation Act, holding that parents may pursue their own claims arising out of the alleged discrimination against their disabled child. *See, e.g., Blanchard v. Morton Sch. Dist.*, 509 F.3d 934, 938 (9th Cir. 2007); *Tereance D. ex rel. Wanda D. v. Sch. Dist. of Phila.*, 548 F. Supp. 2d 162, 170 (E.D. Pa. 2008); *C.J.G. v. Scranton Sch. Dist.*, 2007 WL 4269816, at *4 (M.D. Pa. Dec. 3, 2007). Some reason that a parent of a disabled child "has a particular and personal interest in preventing discrimination against the child." *See Blanchard*, 509 F.3d at 938; *B.D.S. v. Southold Union Free Sch. Dist.*, 2009 WL 1875942 (E.D.N.Y. June 24, 2009). Others focus on *Winkelman*'s reasoning that a parent qualifies as "any aggrieved party" under the IDEA, and argue that a parent

would similarly qualify under equivalent language in the ADA ("person aggrieved") and the Rehabilitation Act ("a party aggrieved"). *See C.J.G.*, 2007 WL 4269816, at *5; *Tereance*, 548 F. Supp. 2d at 170.

This Court declines to so extend the *Winkelman* decision because it is too closely tied to the text and structure of the IDEA to apply equally to the ADA and the Rehabilitation Act. *Winkelman* was not based solely on the "aggrieved party" language and recognized that "consideration of the entire statutory scheme," in addition to the text of the IDEA, resolved the question presented. *See Winkelman*, 550 U.S. at 523; *See also D.A. v. Pleasantville Sch. Dist.*, 2009 WL 972605, at *8 (D.N.J. Apr. 6, 2009). Additionally, the *Winkelman* court reasoned that the text and structure of the IDEA does not differentiate between the rights accorded to children and those accorded to parents, and it provides for "expansive review and extensive parental involvement" at all levels including the federal courts. 550 U.S. at 523. As one court noted, "[o]nly where the rights of the child and parents are coterminous can the parents pursue, on their own behalf, the claims they share with their child." *J.R. ex rel. W.R. v. Sylvan Union Sch. Dist.*, 2008 WL 682595, at *1 (E.D. Cal. Mar. 10, 2008). Since the ADA and the Rehabilitation Act do not involve a statutory scheme that contemplates coterminous rights, the Court finds that Plaintiffs do not have standing to pursue the ADA and the Rehabilitation Act claims based on allegations of discrimination against E.H. *See D.A.*, 2009 WL 972605, at *8 (ADA); *L.F. v. Houston Indep. Sch. Dist.*, 2009 WL 3073926, at *22 (S.D. Tex. Sept. 21, 2009) (Rehabilitation Act).

Nor do Plaintiffs, proceeding *pro se*, have standing to pursue an ADA or Rehabilitation Act claim on behalf of their disabled child. Under Fifth Circuit precedent, "a non-attorney parent cannot appear *pro se* on behalf of a minor child." *See Harris v. Apfel*, 209 F.3d 413, 415 (5th Cir. 2000). Even though *Winkelman* held that parents can assert their own claims under the IDEA based on a

denial of FAPE to their child, it did not hold that they can assert claims on their child's behalf while proceeding *pro se*. Other courts have similarly reasoned that *Winkelman* "does not translate into a broad right to pursue any statutory or common law claims on a child's behalf by a parent proceeding *pro se*." *See L.F.*, 2009 WL 3073926, at *22; *Woodruff v. Hamilton-Township Public Sch.*, 305 F. App'x 833, 836 (3d Cir. 2009). Accordingly, Plaintiffs, as *pro se* litigants, do not have standing to pursue an ADA or Rehabilitation Act claim on behalf of their minor child.

The Court should **GRANT** DISD's Rule 12(b)(1) motion to the extent it seeks dismissal of Plaintiffs' ADA and Rehabilitation Act claims on their behalf and on behalf of E.H.

2. § 1983 Claim

DISD also argues that Plaintiffs lack standing to pursue a § 1983 claim on behalf of E.H. or any other student at E.H.'s school. (*See* Mot. Br. at 6-7.)

Section 1983 provides for liability against any person who, acting under color of state law, deprives an individual of any rights, privileges, or immunities secured by the Constitution and laws of the United States. *See* 42 U.S.C. § 1983; *Equal Access for El Paso, Inc. v. Hawkins*, 562 F.3d 724, 727 n. 3 (5th Cir. 2009). Even though a *pro se* litigant may pursue his own claims under the IDEA, he does not have standing to pursue a § 1983 claim on behalf of his child, even if the claim is based on alleged violations of the IDEA. *See L.F. v. Houston Indep. Sch. Dist.*, 2009 WL 3073926, at *22 (S.D. Tex. Sept. 21, 2009).

Here, Plaintiffs do not have standing to pursue a § 1983 claim on behalf of their child. Nor do they meet their burden of proof to show that they can pursue § 1983 claims on behalf of other students at E.H.'s school. Accordingly, DISD's 12(b)(1) motion should be **GRANTED** to the extent that it seeks dismissal of any § 1983 claims asserted by Plaintiffs on behalf of E.H. or any other

11

student at his school.

**C.     Exhaustion**

DISD asserts that any claims (whether brought under the IDEA, the Rehabilitation Act, the ADA, or § 1983) that were not raised at the due process hearing should be dismissed for failure to exhaust administrative remedies. (Mot. Br. at 2-3, 7-13.) It specifically points out that it is unclear from the amended complaint whether allegations 14 and 17 were addressed at the due process hearing, and it also argues that attachments to Plaintiffs' amended complaint show that allegation 9 concerns acts occurring after the due process hearing. (*Id*. at 9.) It also contends that exhaustion is required even if Plaintiffs are seeking relief under statutory mechanisms other than the IDEA, and even if the money damages they seek in their federal complaint are not available under the IDEA. (*Id.* at 10-12.) Plaintiffs respond that they "have exhausted all administrative requirements that can be decided by [a] TEA hearing officer." (Resp. at 1.)

The IDEA guarantees parents "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(a). When parents make these complaints, they are entitled to an impartial due process hearing by a state or local educational agency. *See* 20 U.S.C. § 1415(f)(1)(A). They can appeal a local agency's decision to the state educational agency. 20 U.S.C. § 1415(g)(1). If they are dissatisfied with the state agency's decision, they can file a civil action in state court or federal district court. *See* 20 U.S.C. § 1415(i)(2)(A). Before filing a complaint related to the identification, evaluation, or educational placement of a child, or the provision of a FAPE to a child, a plaintiff must exhaust his state administrative remedies. *Gardner v. Sch. Bd. Caddo Parish*, 958 F.2d 108, 111 (5th Cir. 1992). The complaint is "not a justiciable controversy until the plaintiff has exhausted his administrative

remedies, or proved that exhaustion would be futile or inadequate." *Id.* at 112. A plaintiff bears the burden of demonstrating the futility or inadequacy of administrative review. *Id.* If a plaintiff does not exhaust his administrative remedies, or prove futility or inadequacy of exhaustion, the district court must dismiss the action for lack of subject matter jurisdiction. *See Doe v. E. Baton Rouge Parish Sch. Bd.*, 121 F.3d 705, 705 (5th Cir. 1997) (per curiam).

A plaintiff may not circumvent the IDEA's exhaustion requirement "by taking claims that could have been brought under the IDEA and repackaging them as claims under some other statute" such as the ADA, the Rehabilitation Act, and § 1983, or by asking for relief that administrative authorities cannot grant, such as money damages. *See* 20 U.S.C. § 1415(l); *Marc V. v. Ne. Indep. Sch. Dist.*, 455 F.Supp. 2d 577, 592 (W.D. Tex. 2006); *Doe v. S & S Consol. I.S.D.*, 149 F.Supp. 2d 274, 304 (E.D. Tex. 2001). In short, a complaint raising IDEA-based claims is not a justiciable controversy until the plaintiff has exhausted his administrative remedies or proved that exhaustion would be futile, regardless of the channels he uses to assert his IDEA-based claims and regardless of the relief he seeks. *Doe*, 149 F.Supp. 2d at 304.

Here, all of Plaintiffs' allegations in the amended complaint essentially allege that: DISD did not provide Plaintiffs procedural safeguards or information required under RTI law; sent parents and students a letter stating policy contrary to its official policy; conducted psychological and suicide assessments of E.H. without their consent; and retaliated against them by lying about their RTI policy, falsifying school records, threatening them with CPS investigations, and making false statements at the administrative hearing in order to influence the hearing officer's decision. All of these allegations are subject to the IDEA's exhaustion requirement because they relate to the provision of a FAPE to E.H. *See M.T.V. v. DeKalb Cnty. Sch. Dist.*, 446 F.3d 1153, 1158 (11th Cir. 2006) (claims of retaliatory conduct such as harassment, intimidation, and needless and intrusive

13

testing related to child's evaluation and education); *Sch. Bd. of Lee Cnty., Fla. v M.M. ex rel. M.M.*, 348 F.App'x 504, 511 (11th Cir. 2009) (the IDEA's exhaustion requirement applies to a "broad" spectrum of claims); *Maroni v. Pemi-Baker Reg'l Sch. Dist.*, 346 F.3d 247, 255 (1st Cir. 2003) ("procedural and substantive rights under the IDEA are inextricably intertwined").

Plaintiffs do not allege in their amended complaint that they exhausted all of their allegations at the due process hearing before the TEA[5]. A review of the hearing officer's decision shows that allegations 1-8, 11-13, and 15 were either considered specifically by the hearing officer or were subsumed within the hearing officer's findings or determination.[6] Therefore, any IDEA and § 1983 claims asserted on their own behalf and based on allegations 1-8, 11-13, and 15 survive dismissal. Additionally, since the hearing officer specifically considered whether E.H. was denied FAPE and due compensatory education, any such claim construable from Plaintiffs' amended complaint also survives dismissal. (Am. Compl. at 4-5.)

Plaintiffs do not allege that the remaining allegations, specifically allegations 9, 10, 14, 16 and 17, were administratively exhausted, and it is not apparent from the hearing officer's decision that these allegations were considered. Even if Plaintiffs' statement in their response brief that they have "exhausted all administrative requirements that can be decided by [a] TEA hearing officer" could be liberally construed as an argument for futility, they have not met their burden of proof. The futility exception applies when there are systematic violations (such as a total failure to prepare and implement individualized education programs), when the hearing officer would be powerless to

---

[5] Texas has a one-tier administrative process where the due process hearing is conducted before the state educational agency, the TEA. *See Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 346 (5th Cir. 2000).

[6] Allegation 1 (Mot. App at 6, ¶5); allegation 2 (Mot. App. at 7, ¶¶ 12-15); allegation 3 (Mot. App. at 7, ¶ 15); allegations 4 & 12 (Mot. App. at 8, ¶¶ 16-17); allegation 5 (Mot. App. at 8, ¶ 17); allegation 6 (Mot. App. at 8, ¶ 21); allegation 7 (Mot. App. at 10, ¶ 36); allegation 8 (Mot. App. at 6, ¶ 7; Mot. App. at 10, ¶ 33); allegation 11 (Mot. App. at 7, ¶ 14); allegation 13 (Mot. App. at 6, ¶ 7); allegation 15 (Mot. App. at 10, ¶ 35).

correct alleged violations, or when there is a settled law policy that cannot be addressed through administrative procedures. *See Papania-Jones v. Dupree*, 275 F.App'x 301, 304 (5th Cir. 2008). Any claims based on allegations 9, 10, 14, 16 and 17 should therefore be dismissed for failure to exhaust administrative remedies.

## IV. RULE 12(c) MOTION TO DISMISS

DISD also moves for judgment on the pleadings on any IDEA or § 1983 claims based on the remaining allegations, i.e. allegations 1-8, 11-13, and 15, pursuant to Fed. R. Civ. P. 12(c), and argues that they are barred in whole or in part by the applicable statute of limitations. (Mot. Br. at 1, 14-24.) DISD relies on the hearing officer's decision to support its motion. (*Id.* at 14, 17-19.)

**A.     Legal Standard**

Parties may move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial." Fed. R. Civ. P. 12(c). Rule 12(c) motions are "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (citation omitted). The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss. *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

Under the 12(b)(6) standard, a court cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In the 12(b)(6) context, pleadings include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they

are referred to in the plaintiff's complaint and are central to her claim." *Collins*, 224 F.3d at 499 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003). In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

When a party presents "matters outside the pleading" with a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the evidence for purposes of the motion to dismiss. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 & n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007). However, "[i]f . . . matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56", and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Here, DISD has attached the hearing officer's decision to its motion, arguing that it is a matter of public record subject to judicial notice. (Mot. Br. at 14-15.) The decision is a matter outside the pleadings, but as a decision of an administrative agency accessible through the agency's website, it is a matter of public record subject to judicial notice. *See Pension Ben.*, 998 F.2d at 1197. Since the Court takes judicial notice of the decision, it need not convert this motion into a motion for summary judgment. *See Cinel*, 15 F.3d at 1343 n. 6.

**B.     Statute of Limitations**

DISD asserts that any remaining claims should be dismissed as barred by the one-year statute of limitations under the IDEA, or alternatively, by the two-year statute of limitations for personal

injury claims.[7] (Mot. Br. at 15-24.) DISD argues that complaints based on events occurring before July 8, 2007 – one year before the day the TEA received the request for the due process hearing – are time-barred. Plaintiffs respond that there are exceptions to the statute of limitations because DISD denied them procedural safeguards when they requested an evaluation. (Resp. at 1; Am. Compl. at 2.) DISD argues that plaintiffs received the safeguards in April 2007. (Mot. Br. at 21.)

Under the IDEA, a parent must request an impartial due process hearing within two years of the date the parent knew or should have known about the alleged actions that form the basis of the complaint, or under an explicit time limitation imposed by the state. *See* 20 U.S.C. § 1415(f)(3)(C). Texas law requires a parent to request a due process hearing within one year of the date the parent knew or should have known about the alleged action that serves as the basis for the hearing request. *See* 19 Tex. Admin. Code § 89.1151(c); *D.C. v. Klein Indep. Sch. Dist.*, 2010 WL 1798943, at *5 (S.D. Tex. May 5, 2010). The statute of limitation also limits any § 1983, ADA, or Rehabilitation Act claims based on time-barred IDEA claims. *See Marc V.*, 455 F.Supp. 2d at 591 (time-barred IDEA claims cannot be resuscitated by being recast as § 1983, § 504, or ADA claims).

A parent may avoid the applicable limitations period based on two exceptions: (1) if he was prevented from requesting a due process hearing due to specific misrepresentations by the local education agency that it had resolved the problem forming the basis of the complaint, or (2) if he was prevented from requesting the hearing due to the local education agency's withholding of required information from the parent. 20 U.S.C. § 1415(f)(3)(d); *El Paso Indep. Sch. Dist. v. Richard R.*, 567 F. Supp. 2d 918, 945 (W.D. Tex. 2008). The second exception addresses the

---

[7] DISD moves the Court to apply the two-year statute of limitations if it determines that all of Plaintiff's claims do not arise under the IDEA. (Mot. Br. at 22.) Since all of Plaintiffs' claims are IDEA-based and relate to the provision of a FAPE to E.H., the Court need not consider whether the two-year statute of limitations applies.

IDEA's requirement that school districts provide parents with "a copy of procedural safeguards" at least once a year, or upon occurrence of any of the following events: initial referral or parental request for evaluation; filing of a complaint related to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate education to the child; or a request by a parent. *See* 20 U.S.C. § 1415(d)(1)(A); *Richard R.*, 567 F. Supp. 2d at 943. "In the absence of some other source of IDEA information, a local educational agency's withholding of procedural safeguards would act to prevent parents from requesting a due process hearing to administratively contest IDEA violations until such time as an intervening source apprised them of their rights." *Richard R.*, 567 F. Supp. 2d at 945. "When a local educational agency delivers a copy of IDEA procedural safeguards to parents, the statutes of limitations for IDEA violations commence without disturbance." *Id.* A statue of limitations defense is an affirmative defense, and the party pleading it bears the burden of proof. *F.T.C. v. Nat'l Bus. Consultants, Inc.*, 376 F.3d 317 (5th Cir. 2004).

Since Plaintiffs filed for a due process hearing on July 8, 2008, the one-year statute of limitations under Texas law precludes recovery for any violations occurring before July 8, 2007.[8] All of Plaintiffs' remaining allegations – except allegations 5, and 6 – occurred before July 8, 2007, and any claims based on those allegations should be dismissed as time-barred. Any IDEA and § 1983 claims based on DISD's alleged conduct in allegations 5 and 6 should survive dismissal, however. To the extent that the amended complaint can be liberally construed to allege that E.H. was denied FAPE and due compensatory education between July 8, 2007 and July 8, 2008, the IDEA and § 1983 claims based on that allegation should also survive dismissal.

---

[8] Even though Plaintiffs assert that DISD failed to provide them with procedural safeguards, the hearing officer's decision shows that they received the procedural safeguards on April 4, 2007, more than a year before they requested a due process hearing.

18

## V. CONCLUSION

Defendant DISD's 12(b)(1) motion should be **GRANTED,** and its 12(c) motion should be **GRANTED** in part, and **DENIED** in part. The Court should dismiss all of Plaintiffs' claims except any IDEA and § 1983 claims asserted on their behalf and based on the FIE report dated August 9, 2007, the ARD committee decision dated August 22, 2007, and on allegations that E.H. was denied FAPE and due compensatory education between July 8, 2007, and July 8, 2008.

**SO RECOMMENDED on this 13th day of September, 2010.**

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE