| | | |
|---|---|---|
| TARA HOOKER AND | § | |
| LOUIS HOOKER | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | Civil Action No. 3:09-CV-0676-G-BH |
| | § | |
| DALLAS INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| **Defendant.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to Special Order No. 3-251, this case has been referred for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court are *Plaintiff's Motion for Summary Judgment* (doc. 47), filed November 3, 2010, and *Defendant Dallas Independent School District's Motion for Summary Judgment and Brief in Support Thereof* (doc. 49), filed December 3, 2010. Based on the relevant filings, evidence, and applicable law, Plaintiff's motion should be **DENIED**, and Defendant's motion should be **GRANTED**.

## I. BACKGROUND

Plaintiffs Tara Hooker and Louis Hooker, parents of a minor child E.H., appeal the decision of a Texas Education Agency ("TEA") special education hearing officer.

E.H. is a student in the Dallas Independent School District ("DISD") and has struggled with mathematics since he started kindergarten. (D. App., p. 8.) In September 2006, when E.H. was in third grade, Mrs. Hooker vocalized her concerns about E.H.'s performance at a school meeting and requested a special education evaluation for him. (*Id.*) His math teacher confirmed that E.H. was

struggling in math, refused to complete his work, turned in incomplete work, and appeared sad and depressed generally. (*Id.*) The following month, E.H.'s reading and math teachers referred him for counseling services because he was not doing his work, appeared upset, and manifested low self-esteem. (*Id.*) Jenny Norris, the school counselor and head of the Student Support Team ("SST") program at the time, contacted Mrs. Hooker twice and recommended that E.H. receive counseling services from the district. Mrs. Hooker declined, claiming that E.H. was happy and content at home, that his problem was unique to school, and that it was specifically related to his inability to perform math. (*Id.*) E.H.'s teachers made several interventions that semester to aid him in math, reading, and social behavior, but he continued to receive failing grades in math, and his behavior deteriorated substantially. (*Id.*) His math teacher suspected a learning disability in math, and his reading teacher appeared concerned that his behavior was affecting his academics. (*Id.*) The teachers made numerous attempts to conference with Plaintiffs, but they were unresponsive. (*Id.*)

In January of 2007, Mrs. Hooker inquired about the progress of the three-stage SST process at DISD, consisting of a referral to the SST, meeting of the SST, and a referral to special education, if appropriate. (*Id.* at 9.) Plaintiffs received the notice of referral on February 21, 2007, and E.H.'s SST meeting took place on February 28, 2007. (*Id.*) Because the SST was concerned about E.H.'s incomplete class work, his below-grade-level achievement in math, science and social studies, and his behavior, it agreed to move on to the next stage of the SST process — evaluation. (*Id.*) In March 2007, during the process of information gathering for the SST, Mrs. Hooker concurred that E.H. had all but "shut down" at school, that he needed "a lot of help in math," and that he did not understand math at all. (*Id.*)

According to DISD's computer records, Mrs. Hooker received the following documents from Norris on April 4, 2007: Notice of Full Individual Evaluation ("FIE") Including Psychological

Evaluation, Consent for FIE Including Psychological Evaluation, and Receipt for Explanation of Procedural Safeguards. (*Id.*) On April 11, 2007, Mr. Hooker signed the Consent for FIE with Psychological Testing and a Receipt for Explanation of Procedural Safeguards, verifying that he had received a copy of the Explanation of Procedural Safeguards. (*Id.*) The documents were locked into DISD's computer system as duly executed on April 26, 2007. (*Id.*)

Because both parents had consented to a psychological evaluation of E.H., a Behavioral Assessment System for Children ("BASC") Form was completed for E.H. on April 26, 2007, with input from Mrs. Hooker and his teacher, Dwayla Cato, on his behavior. (*Id.* at 21-63, 99.) The following month, Linda Tokoly, an educational diagnostician, got the impression that Plaintiffs did not want psychological testing and called Mrs. Hooker to confirm their consent; Mrs. Hooker withdrew her consent for psychological testing. (*Id.* at 10, 97-98.) That same month, Mr. Hooker signed a Notice of Proposal for Evaluation, which deleted the referral for a psychological evaluation. (*Id.* at 10.) Above the signature line was an acknowledgment that Plaintiffs had received a full explanation of all procedural safeguards. (*Id.*) After Plaintiffs rescinded their consent, the psychological evaluation, which had begun with the BASC report on April 26, 2006, was stopped mid-process and never completed. (*Id.* at 104.)

Tokoly later testified that she did not use the results of the validity index summary generated as a result of the BASC report or include them in her FIE report because they were part of the psychological evaluation. (*Id.* at 101-02.) She also testified that she did not "go through or score" the BASC, but that she "basically looked at the summary" in the BASC indicating high depression and anxiety. (*Id.* at 103.) Tokoley also noted in the actual FIE that the BASC findings indicated high depression and anxiety. (*Id.* at 77.) When questioned as to why the report date on the form was July 31, 2007, she responded that she wasn't sure, but explained that it might have been printed for

3

the purpose of gathering some additional information on E.H. (*Id.* at 100.) Mrs. Hooker testified that she agreed with the results of the FIE that E.H. had a learning disability in math reasoning and a speech impairment. (*Id.* at 112-13.) Mr. Hooker did not remember whether he agreed with the FIE or not. (*Id.* at 107-08.)

On August 22, 2007, the Admission, Review, and Dismissal ("ARD") committee convened and determined that E.H. was eligible for special education services due to a learning disability in math reasoning and a speech impairment. (*Id.* at 10-11.) The committee noted that E.H. was already receiving the Texas Essential Knowledge and Skills ("TEKS") on or near his grade level, but needed accommodation on the Texas Assessment of Knowledge and Skills ("TAKS") test. (*Id.* at 11.) The committee developed an Individualized Education Program ("IEP") for E.H. It agreed that E.H. should participate in the TAKS with accommodations in math, reading and writing, and receive 45 minutes everyday of modified TEKS instruction in math, 45 minutes of modified TEKS instruction in language arts and reading in a general education setting, and 180 minutes every six weeks of speech therapy with additional services in a special education setting. (*Id.*) The committee devised other modifications and accommodations for other subjects and determined that no additional evaluations were necessary at the time. (*Id.* at 10-11.) Plaintiffs, who also participated in the meeting, provided written consent for special education services for the 2007-2008 school year. (*Id.*)

Pursuant to the IEP developed by the ARD committee, E.H. received in-class support in math, language arts and reading. (*Id.*) His final averages for the 2007-2008 school year were passing in all subjects; he received a 100 in music, a 74 in language arts, a 73 in math, a 75 in science and health, a 100 in physical education, a 76 in reading, a 78 in social studies, and a 96 in fine arts. (*Id.*) At the conclusion of the 2007-2008 school year, E.H. passed the TAKS

accommodation in reading and writing, but failed it in math. (*Id.*) Even though E.H. did not receive all of his speech therapy due to a vacancy during school year 2007-2008, he received some of the deficient hours of speech therapy in the summer of 2008. (*Id.*) The parties agreed to make up for the remaining deficient hours in school year 2008-2009. (*Id.*)

On July 8, 2008, Plaintiffs filed a complaint with the TEA on behalf of E.H., requesting a due process hearing pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. They alleged generally that E.H. had been denied a free appropriate public education ("FAPE") and specifically that he had been denied special education services during the 2006-2007 school year, and that there were deficits in the development and implementation of his special education program during that school year. (*Id.* at 3.) A hearing officer conducted the due process hearing in November 2008, and found that any claims arising out of DISD's acts or omissions prior to July 7, 2007[1] were barred by the one-year statute of limitations, and that the evidence was insufficient to prove that E.H.'s 2007-2008 special education plan was deficiently designed and implemented. (*Id.* at 6, 19.)

Following the hearing officer's decision, Plaintiffs timely filed this *pro se* action against DISD, seeking damages under the IDEA; § 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*; the Americans with Disabilities Act, 42 U.S.C. § 12.101 *et seq.*; and 42 U.S.C. § 1983 ("§ 1983"). The Court granted DISD's motion to dismiss, holding that any IDEA or § 1983 claims arising out of alleged acts or omissions prior to July 8, 2007 were barred by the applicable statute of limitations, and dismissing all of Plaintiffs' claims except any IDEA and § 1983 claims asserted on their behalf

---

[1] Although the hearing officer used this date in her "Conclusions of Law", she found that the one-year statute of limitations confined E.H.'s complaint to acts or omissions on the part of DISD occurring between *July 8, 2007* and July 8, 2008 in the "Statute of Limitations" section. (Mot. App. at 15.) This discrepancy in dates does not affect the outcome.

and based on the FIE report dated August 9, 2007, the ARD committee decision dated August 22, 2007, and on allegations that E.H. was denied FAPE and due compensatory education between July 8, 2007, and July 8, 2008. The parties were ordered to address the remaining issues through cross-motions for summary judgment. Plaintiffs filed a motion for summary judgment listing four topics for review: denial of FAPE, violation of parental consent and authority, denial of procedural safeguards, and denial of compensatory education. DISD responded by filing a cross-motion for summary judgment addressing each specific topic. The motions are now ripe for consideration.

## II. EVIDENTIARY CONSIDERATIONS

DISD moves to strike two exhibits attached to Plaintiffs' motion, arguing that the exhibits are unauthenticated and in contravention of their previous stipulation that no additional evidence was needed. (D. Mot. at 30-31.) DISD also argues that the first exhibit titled "DISD 2006/2007 Referral Process" relates to claims outside the statute of limitations, and the second exhibit titled "DISD Evaluation of E.H. 2010" relates to a claim that has not been properly exhausted. (*Id.* at 30.) Because the exhibits, even if considered, do not affect the disposition of the pending motion for summary judgment, DISD's objections are **OVERRULED** as moot and the motion to strike is **DENIED**. *See Continental Casualty Co. v. St. Paul Fire & Marine Ins. Co.*, 2006 WL 984690, at *1 n. 6 (N.D. Tex. Apr.14, 2006) (Fitzwater, J.) (overruling as moot objections to evidence that was not considered by the court in deciding motion for summary judgment).[2]

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no

---

[2] Before proceeding to its grounds for summary judgment, DISD argues that Plaintiffs have abandoned their claims by failing to provide any arguments in support of those claims, or any citations to the administrative record, statutes, regulations or cases, in violation of the Court's scheduling order. Because Plaintiffs are proceeding *pro se* and the claims are subject to dismissal on other grounds asserted by DISD, it is unnecessary to dismiss the claims as abandoned.

genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Id.*  The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists.  Fed. R. Civ. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324.  To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor.  *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's burden.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322-23.

Generally, the courts liberally construe the pleadings of a *pro se* plaintiff.  *See*, *e.g.*, *Haines*

*v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981); *Martin v. United States Post Office*, 752 F. Supp. 213, 218 (N.D. Tex. 1990). However, the courts have no obligation under Fed. R. Civ. P. 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Instead, a party opposing summary judgment must "identify specific evidence in the record" that supports the challenged claims and "articulate the precise manner in which that evidence supports [a challenged] claim." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

## IV. DENIAL OF FAPE IN THE 2006-2007 SCHOOL YEAR

Plaintiffs first claim that E.H. was denied FAPE during the 2006-2007 school year. (P. Mot. at 1.) They allege that E.H. failed math in the 2006-2007 school year as well as in previous years, and that after Mrs. Hooker requested his evaluation in September 2006, DISD failed to test him during the 2006-2007 school year. (*Id.*) DISD responds that Plaintiffs' claim for denial of FAPE during the 2006-2007 year and the corresponding allegations have already been dismissed, or should be dismissed, as barred by the statute of limitations. (D. Mot. at 15-16.)

Under the IDEA, a parent must request an impartial due process hearing within two years of the date the parent knew or should have known about the alleged actions that form the basis of the complaint, or under an explicit time limitation imposed by the state. *See* 20 U.S.C. § 1415(f)(3)(C). Texas law requires a parent to request a due process hearing within one year of the date the parent knew or should have known about the alleged action that serves as the basis for the hearing request. *See* 19 Tex. Admin. Code § 89.1151(c); *D.C. v. Klein Indep. Sch. Dist.*, 2010 WL 1798943, at *5 (S.D. Tex. May 5, 2010). The statute of limitation also limits any § 1983, ADA, or

Rehabilitation Act claims based on time-barred IDEA claims. *See Marc V. v. NE Indep. Sch. Dist.*, 455 F.Supp. 2d 577, 591 (W.D. Tex. 2006)(time-barred IDEA claims cannot be resuscitated by being recast as § 1983, § 504, or ADA claims).

A parent may avoid the applicable limitations period based on two exceptions: (1) if he was prevented from requesting a due process hearing due to specific misrepresentations by the local education agency that it had resolved the problem forming the basis of the complaint, or (2) if he was prevented from requesting the hearing due to the local education agency's withholding of required information from the parent. 20 U.S.C. § 1415(f)(3)(d); *El Paso Indep. Sch. Dist. v. Richard R.*, 567 F. Supp. 2d 918, 945 (W.D. Tex. 2008). The second exception addresses the IDEA's requirement that school districts provide parents with "a copy of procedural safeguards" at least once a year, or upon occurrence of any of the following events: initial referral or parental request for evaluation; filing of a complaint related to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate education to the child; or a request by a parent. *See* 20 U.S.C. § 1415(d)(1)(A); *Richard R.*, 567 F. Supp. 2d at 943. "In the absence of some other source of IDEA information, a local educational agency's withholding of procedural safeguards would act to prevent parents from requesting a due process hearing to administratively contest IDEA violations until such time as an intervening source apprised them of their rights." *Richard R.*, 567 F. Supp. 2d at 945. "When a local educational agency delivers a copy of IDEA procedural safeguards to parents, the statutes of limitations for IDEA violations commence without disturbance." *Id.* A statue of limitations defense is an affirmative defense, and the party pleading it bears the burden of proof. *F.T.C. v. Nat'l Bus. Consultants, Inc.*, 376 F.3d 317 (5th Cir. 2004).

This Court previously found that the one-year statute of limitations under Texas law precludes recovery for any violations occurring before July 8, 2007, and that any IDEA or § 1983

claims arising out of alleged acts or omissions occurring before July 8, 2007, were barred by the applicable statute of limitations. Summary judgment should be granted on Plaintiffs' IDEA claim for denial of FAPE during the 2006-2007 school year because the alleged acts or omissions underlying that claim occurred before July 8, 2007.

## V.  VIOLATION OF PARENTAL CONSENT AND AUTHORITY

Plaintiffs also claim that DISD violated parental consent and authority when Helen Norris, a DISD employee conducted a suicide risk assessment of E.H. in April 2007 before obtaining their parental consent, and when Tokoly ran the results of E.H.'s psychological evaluation in July 2007 and included them in her FIE report after they rescinded their consent in May and June of 2007. (*Id.* at 1-2.) Based on these allegations, Plaintiffs claim "a pattern by two different DISD employees under different supervision violat[ing] the parents' authority knowingly and with deliberate indifference." (*Id.* at 2.)

### A.  Suicide Risk Assessment

DISD moves to strike Plaintiffs' claim that the suicide risk assessment violated their consent rights on the ground that it has specifically been dismissed as outside the statute of limitations. (Mot. at 16.) Alternatively, DISD urges dismissal of the claim again as outside the statute of limitations. (*Id.*) When ruling on DISD's previous motion to dismiss, this Court specifically dismissed as time-barred any claim based on allegations that the suicide risk assessment on April 3, 2007, was conducted without parental consent. Because this claim has already been dismissed, there is no need to strike or dismiss it again.

### B.  Psychological Evaluation

DISD argues that Plaintiffs' allegation that Tokoly ran a psychological evaluation of E.H.

without parental consent fails to state a cognizable violation of the IDEA. (D. Mot. at 17-19.)

The IDEA requires informed consent of the parent before an initial evaluation is conducted to determine whether a child is disabled as defined by the IDEA. 20 U.S.C. § 1413(a)(1)(C). Related federal regulations provide that if a parent revokes that consent, the revocation is not retroactive, "i.e. it does not negate an action that has occurred after the consent was given and before the consent was revoked." *See* 34 C.F.R. § 300.9(c)(2). The regulations further provide that in determining the educational need and eligibility of a child, the district must "[d]raw upon information from a variety of sources, including aptitude and achievement tests, parent input, and teacher recommendations, as well as information about the child's physical condition, social or cultural background, and adaptive behavior." 30 C.F.R. § 300.306(c)(i). The district must "[e]nsure that information obtained from all of these sources is documented and carefully considered." 30 C.F.R.§ 300.306(c)(ii).

Here, the evidence proffered by DISD shows that Plaintiffs consented to a psychological evaluation for E.H. on April 11, 2007, the BASC form was completed on April 26, 2007, the parents rescinded their consent in May 2007, and psychological testing was never completed because of the revocation of consent. (D. App. at 9-10, 97-99, 104.) Even though Tokoly testified that she was not sure why the date on the BASC report was July 31, 2007, she explained that it might have been printed for the purpose of gathering some additional information on E.H. (*Id.* at 100.) She expressly stated that she did not use the results of the validity index summary generated from the BASC report in completing the FIE because that would have been part of the psychological evaluation, that she did not "go through or score" the BASC, and that she "basically looked at the summary" in the BASC for her FIE report. (*Id.* at 101-03.)

Because the BASC form was completed before consent was revoked, the revocation did not

call for the deletion of the information contained in the BASC, but only stopped any further testing or psychological evaluation from taking place. *See* 34 C.F.R. § 300.9(c)(2). Further, under relevant regulations, it was appropriate for Tokoly to consider the raw data gathered from his teacher and mother, especially since the data was gathered before Plaintiffs revoked their consent. *See* 30 C.F.R § 300.306(c)(i) & (ii). Summary judgment should be granted on any IDEA claim that Tokoly ran a psychological evaluation of E.H. and included it in her FIE without parental consent.

## C. Pattern of Indifference

Construing Plaintiffs' allegation that the combined conduct of the two DISD employees showed a pattern of knowing and deliberate indifference to parental authority as a § 1983 claim, DISD argues that the court does not have subject matter jurisdiction over the claim because it has not been administratively exhausted. (D. Mot. at 19-21.) DISD argues that if the claim has been exhausted, Plaintiffs have not met the requirements for establishing § 1983 liability. (*Id.*)

The IDEA guarantees parents "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(a). When parents make these complaints, they are entitled to an impartial due process hearing by a state or local educational agency. *See* 20 U.S.C. § 1415(f)(1)(A). They can appeal a local agency's decision to the state educational agency. 20 U.S.C. § 1415(g)(1). If they are dissatisfied with the state agency's decision, they can file a civil action in state court or federal district court. 20 U.S.C. § 1415(i)(2)(A).

Before filing a complaint related to the identification, evaluation, or educational placement of a child, or the provision of a FAPE to a child, a plaintiff must exhaust his state administrative remedies. *Gardner v. Sch. Bd. Caddo Parish*, 958 F.2d 108, 111 (5th Cir. 1992). The complaint is

"not a justiciable controversy until the plaintiff has exhausted his administrative remedies, or proved that exhaustion would be futile or inadequate." *Id.* at 112. A plaintiff bears the burden of demonstrating the futility or inadequacy of administrative review. *Id.* If a plaintiff does not exhaust his administrative remedies, or prove futility or inadequacy of exhaustion, the district court must dismiss the action for lack of subject matter jurisdiction. *Doe v. E. Baton Rouge Parish Sch. Bd.*, 121 F.3d 705, 705 (5th Cir. 1997) (per curiam).

A plaintiff may not circumvent the IDEA's exhaustion requirement "by taking claims that could have been brought under the IDEA and repackaging them as claims under some other statute" such as the ADA, the Rehabilitation Act, and § 1983, or by asking for relief that administrative authorities cannot grant, such as money damages. *See* 20 U.S.C. § 1415(l); *Marc V. v. NE Indep. Sch. Dist.*, 455 F.Supp. 2d 577, 592 (W.D. Tex. 2006); *Doe v. S & S Consol. I.S.D.*, 149 F.Supp. 2d 274, 304 (E.D. Tex. 2001). A complaint raising IDEA-based claims is not a justiciable controversy until the plaintiff has exhausted his administrative remedies or proved that exhaustion would be futile, regardless of the channels he uses to assert his IDEA-based claims and regardless of the relief he seeks. *Doe*, 149 F.Supp. 2d at 304.

Here, Plaintiffs' claim that the conduct of the two DISD employees showed a pattern of knowing and deliberate indifference to parental authority is essentially an IDEA-based claim subject to the exhaustion requirement. There is no evidence in the record that this claim was administratively exhausted, and Plaintiffs do not even argue that it has been exhausted. Accordingly, any § 1983 claim based on allegations of a pattern of deliberate indifference should be dismissed without prejudice for lack of subject-matter jurisdiction. Because dismissal is required on this basis, the Court need not reach DISD's alternative ground for dismissal.

## VI.  DENIAL OF PROCEDURAL SAFEGUARDS

In a section entitled "Procedural Safeguards," Plaintiffs allege that Mrs. Hooker made a request for evaluation in September 2006 but did not receive procedural safeguards, thereby violating their due process rights, and that DISD's treatment of their referral as a school referral violated their constitutional rights.  (P. Mot. at 2.)  They further allege that it was common practice by DISD to violate parents' due process rights, that DISD did not provide procedural safeguards to parents when they requested an evaluation in the 2006-2007 school year, and that depriving the parents of their due process rights was how DISD handled referrals in the 2006-2007 school year. (*Id.*)  DISD responds that these claims have already been dismissed outside the statute of limitations, and alternatively, urges the Court to dismiss these claims again as time-barred.  (D. Mot. at 21-22.)

The Court has already dismissed any claims based on Plaintiffs' allegations that they were denied procedural safeguards and that their referral was treated as a school referral as barred by the statute of limitations.  Any IDEA or § 1983 claims arising out of the remaining allegations of a systemic violation should also be dismissed as time-barred because they relate to the 2006-2007 school year and occurred before July 8, 2007.

## VII.  COMPENSATORY EDUCATION

In their fourth claim, entitled "Compensatory Education," Plaintiffs allege that even though E.H. continues to be a student with disability and was evaluated by DISD in February 2010 as being at a second grade math level, "DISD has failed to remediate E.H. in math."  (P. Mot. at 2.)  They request compensatory education for E.H. in the form of private placement and assert that after the denial of FAPE to E.H., "compensatory services must be more than some benefit as required by a regular IEP."  (*Id.*)  DISD responds that Plaintiffs have not administratively exhausted their claims

related to E.H.'s current educational placement or need, have not established that E.H. was denied FAPE during the 2007-2008 school year, and have not established an academic need for private placement at public expense.  (D. Mot. at 23-30.)

**A.  Current Placement**

DISD argues that any IDEA or §1983 claims based on E.H.'s current educational placement or need should be dismissed for lack of administrative exhaustion.  (D. Mot. at 23-26.)  As discussed before, a plaintiff must exhaust his administrative remedies before filing a complaint related to the identification, evaluation, or educational placement of a child, or prove that exhaustion would be futile or inadequate.  *Gardner*, 958 F.2d at 111-12.  The requirement applies regardless of whether the claim is presented as an IDEA claim, a § 1983 claim, or other federal claim.  *See* 20 U.S.C. 1415(l); *Marc V.*, 455 F.Supp. 2d at 592; *Doe*, 149 F.Supp. 2d at 304.  Here, any claims based on Plaintiffs' allegations regarding E.H.'s currents needs and placement during the 2010-2011 school year and regarding his February 2010 evaluation were not exhausted at the due process hearing in November 2008.  Additionally, Plaintiffs have neither asserted nor established that the exceptions to the exhaustion requirement apply here.  Accordingly, any IDEA or § 1983 claims based on E.H.'s current educational needs or placement should be dismissed without prejudice for lack of subject matter jurisdiction.

**B.  Denial of FAPE in 2007-2008**

Even though Plaintiffs do not make any specific assertions in their motion about a denial of FAPE during the 2007-2008 school year, they have raised the claim in their amended complaint and it has previously been found to be ripe for review.  DISD urges dismissal of the claim on the merits, arguing that Plaintiffs have failed to meet their burden of establishing that E.H. was denied FAPE

during the 2007-2008 school year.  (D. Mot. at 23, 26-28.)

The IDEA requires a state to provide all children with a "free appropriate public education" in order to receive federal funding.  *Bd. of Educ. v. Rowley*, 458 U.S. 176, 180-81(1982).  The FAPE required by the IDEA is tailored to the unique needs of a child with a disability by means of an IEP developed by an ARD committee.  *Id.* at 1801-82.  The FAPE tailored by the committee and described in an IEP "need not be the best possible one, nor one that will maximize the child's educational potential."  *See Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 247 (5th Cir. 1997).  The IDEA only guarantees "a basic floor of opportunity, specifically designed to meet the child's unique needs, supported by services that will permit him to benefit from the instruction."  *Richardson Indep. Sch. Dist. v. Michael Z.*, 580 F.3d 286, 292 (5th Cir. 2009) (citing *id.* at 247-48; *Rowley*, 458 U.S. at 200).  Still, the educational benefit "cannot be a mere modicum or *de minimis*; rather, an IEP must be likely to produce progress, not regression or trivial educational advancement." *Michael F.*, 118 F.3d at 248 (citation and quotation marks omitted).

Judicial review of the adequacy of an IEP is limited to two questions: whether the state has complied with the procedural requirements of the IDEA and whether the IEP developed for the child is reasonably calculated to enable the child to receive meaningful educational benefits.  *Rowley*, 458 U.S. at 206-07; *Michael Z.*, 580 F.3d. at 293.  Here, Plaintiffs do not allege that DISD's failure to comply with the procedural requirements of the IDEA in the 2007-2008 school year.  The issue is therefore whether E.H.'s IEP was reasonably calculated to enable him to receive meaningful educational benefits.  The Fifth Circuit has identified four factors that can serve as indicators of whether an IEP is reasonably calculated to provide meaningful educational benefits under the IDEA: "(1) the program is individualized on the basis of the student's assessment and performance; (2) the program is administered in the least restrictive environment; (3) the services are provided in a co-

ordinated and collaborative manner by the key 'stakeholders'; and (4) positive academic and non-academic benefits are demonstrated." *Michael F.*, 118 F.3d at 253. "The IDEA creates a presumption in favor of a school district's educational plan, placing the burden of proof by a preponderance of the evidence, on the party challenging it." *R.H. v. Plano Indep. Sch. Dist.*, 607 F.3d 1003, at 1010 (5th Cir. 2010) (citing *Salley v. St. Tammany Parish Sch. Bd.*, 57 F.3d 458, 467 (5th Cir.1995)).

A district court reviewing the decision of a hearing officer under the IDEA should accord "due weight" to the officer's findings, but must ultimately reach "an independent decision based upon the preponderance of the evidence that is virtually *de novo*." *R.H.*, 607 F.3d at 1010 (citation and internal quotation marks omitted). The court's task is not to second-guess the decisions of school officials or to substitute their educational plans for disabled students with its own, but to determine whether those officials have complied with the IDEA. *Id.* (citing *Flour Bluff Indep. Sch. Dist. v. Katherine M.*, 91 F.3d 689, 693 (5th Cir. 1996)).

1. <u>Individualized Program</u>

With respect to the first factor, the hearing officer properly found that E.H.'s 2007-2008 IEP was individualized on the basis of his assessments and performance. (D. App., pp. 16-18.) As the hearing officer pointed out, in determining E.H.'s needs, the ARD committee discussed information from school personnel, information from parents, vision, hearing, and medical information, speech and language evaluations, assistive technology assessments, and the FIE completed on August 9, 2007. (*Id.* at 17.) The committee found that: E.H. had a speech impairment, a communication need in oral speech, and difficulty working independently; his disability significantly interfered with his ability to meet regular academics in language, communication, science, and math; and his functioning in oral reading, reading comprehension, written language, math, and listening

comprehension was not at the developmental level. (*Id.*) The committee determined that E.H.'s needs could be met without resort to assistive technology and with the following accommodations and support: written content would be presented orally; additional time would be provided to complete work, math questions would be read to E.H.; he would be allowed to work in small groups; and he would be provided with inclusion services in English language arts/reading and math, and pull out services for speech therapy. (*Id.* at 17-18.) The committee agreed that general and special education providers would coordinate the monitoring of E.H.'s performance, the assignment of grades, and consultation. (*Id.* at 17.)

After considering this evidence, the hearing officer concluded that qualified professionals from DISD had assessed E.H. by using a plethora of instruments, and based on their assessments, had provided E.H. with a program entailing clearly articulated measurable goals and objectives for services in his areas of need. (*Id.* at 18.) Plaintiffs did not specify any evidence to the contrary at the due process hearing and fail to do so here.

### 2. Least Restrictive Environment

With respect to the second factor, the hearing officer found that E.H. received special education services in the least restrictive requirement. (D. App., p. 18.) A least restrictive environment is defined as "not only freedom from restraint, but the freedom of the child to associate with his or her family and able-bodied peers to the maximum extent possible." *Teague Indep. Sch. Dist. v. Todd L.*, 999 F.2d 127, 128 n. 2 (5th Cir. 1993). When a child attends his normally assigned school and is "mainstreamed with his peers as much as possible," the environment is the least restrictive environment. *See Pace v. Bogalusa City Sch. Bd.*, 325 F.3d 609, 620 (5th Cir. 2005). Plaintiffs did not dispute at the hearing level that E.H. received services in the least restrictive environment and fail to do so here.

3. Collaborative Services

As to the third factor, the hearing officer properly found that the special educational services were provided in a coordinated and collaborative manner by the key stakeholders. (D. App., p. 18.) The providers were all certified and properly trained to provide these services, the teachers used the recommended modifications and accommodations, often allowing E.H. to work on the computer because he enjoyed it, and they coordinated daily with each other regarding updates and classroom strategies. (*Id.*) The teachers often made overtures to Plaintiffs to conference, but they generally ignored these requests. (*Id.*) While E.H. did not receive some of the speech therapy services during the 2007-2008 school year due to a vacancy, he received some of the deficient services in the summer of 2008, and the parties agreed that DISD would make up for the remaining services in the 2007-2008 school year. (*Id.*) As a local educational agency, DISD retained some flexibility in scheduling the services outlined in the IEP, and when necessary, providing compensatory services. *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 348 (5th Cir. 2000). Additionally, Plaintiffs, as parties challenging the implementation of the IEP, were required to show more than a *de minimis* failure to implement all elements of that IEP; they were required to demonstrate that DISD "failed to implement substantial or significant provisions of the IEP." *Id.* at 349. As the hearing officer determined, Plaintiffs have not met this burden.

4. Positive Benefits

As for the fourth and final factor, the hearing officer found that E.H. had made academic and non-academic progress during the 2007-2008 school year. (D. App. p. 18-19.) E.H. demonstrated non-academic progress with his noticeably improved behavior in the 2007-2008 school year; he interacted with his peers, teachers, and service providers, and did not have a depressed demeanor anymore. (*Id.*) He also made academic progress by passing every class every six weeks of the

2007-2008 academic year, with final average scores ranging from 73 to 100. (*Id.*) At the conclusion of the 2007-2008 school year, E.H. also passed the TAKS accommodation in reading and writing, and while he failed the TAKS accommodation in math, his score was an improvement over his 2007 score. (*Id.*) In the Fifth Circuit, passing marks and advancement from grade to grade are sufficient and objective indicia of an educational benefit. *See Michael F.*, 118 F.3d at 253; *Bobby R*, 200 F.3d at 347. The hearing officer therefore correctly found that E.H. received academic and non-academic progress during the 2007-2008 school year.

Based on consideration of the four factors, E.H's IEP was reasonably calculated to provide meaningful educational benefits. Any IDEA or § 1983 claims based on Plaintiffs' allegations that E.H. was denied FAPE during the 2007-2008 school year should therefore be dismissed with prejudice.

## C. Private Placement

DISD lastly argues that Plaintiffs' request for private placement at public expense should be denied because they have not established that E.H.'s public school program is inappropriate, or that private placement is both appropriate and necessary. (D. Mot. at 28-30.)

While the IDEA contemplates that special education services will be provided where possible in regular public schools with the child participating as much as possible in the same activities as non-handicapped children, it also provides for placement in private schools at public expense where this is not possible. *Sch. Comm. of the Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369-70 (1985). However, private placement may be ordered only if the parents or guardians establish that an IEP calling for placement in a public school was inappropriate under the IDEA, and that private school placement is proper under the IDEA. *Id.* at 370; *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 14-16 (1993); *Michael F.*, 118 F.3d at 248. "If the

reviewing court determines that the school district's IEP was appropriate, it need not reach the issue of the appropriateness of the private placement by the parents." *Michael F.*, 118 F.3d at 248 (citing *Teague*, 999 F.2d at 132). Here, because DISD's IEP has been found appropriate, there is no need to reach the issue of whether private placement is appropriate in this case. *See Adam J. ex rel. Robert J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 811 (5th Cir. 2003) (the district court's ruling on private placement was merely dicta where it concluded that the district had provided the student with a FAPE).

## VIII. CONCLUSION

DISD's motion for summary judgment should be **GRANTED**, and Plaintiffs' motion for summary judgment should be **DENIED**. Plaintiffs' IDEA and § 1983 claims based on the suicide risk assessment, the alleged denial of procedural safeguards in September 2006, and the alleged treatment of their referral as a school referral have already been dismissed with prejudice as time-barred. Plaintiffs' IDEA or § 1983 claims based on their allegations of a pattern of knowing and deliberate indifference to parental authority by DISD employees, and on E.H.'s current educational needs and placement, should be dismissed without prejudice for lack of subject-matter jurisdiction. Plaintiffs' IDEA and § 1983 claims based on the alleged denial of FAPE in the 2006-2007 school year and on the alleged systemic denial of procedural safeguards during the 2006-2007 should be dismissed with prejudice as time barred. Plaintiffs' IDEA or § 1983 claims based on the psychological evaluation and the alleged denial of FAPE in the 2007-2008 year should be dismissed on the merits with prejudice.

**SO ORDERED** on this 31st day of March, 2011.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE